## HUBBELL & CURRAN *vs.* CARPENTER.

H. & C., after having recovered a judgment against E., the principal debtor, assigned the same to M., together with the execution issued thereon, and all moneys due on the same, and the property already sold upon the execution and bid in by H. & C., giving M. the right at all times to control the execution; but reserving to the assignors the right to enforce a judgment obtained by them against C., the surety of E. for a part of the same debt. At the same time H. & C. gave to E. a receipt, in which they promised and agreed not to enforce any claim under or by virtue of their judgment against him, or on the note upon which that judgment was obtained; *Held*, that H. & C. had by the arrangement made with M. & E. in effect released E. from all further obligation to pay that part of their debt for which C. was liable as surety; and that having disabled themselves from collecting their debt of E., the principal debtor, or from transferring the right to enforce collection to C., the surety, upon his paying the debt, they had exonerated C. also. PARKER, J. dissenting.

In equity, an endorser does not lose his character of surety by the recovery of a judgment against him upon the original security.

Although there is no duty of active diligence imposed upon a creditor for the protection of a surety, yet on the other hand, if by his own active interference the creditor suspends his own right, and consequently the right of the surety, if he shall claim his privilege of substitution, to proceed for the collection of the debt against the principal debtor; or if the creditor relinquishes any security he may hold for his debt, or surrender any funds he may hold applicable to its payment, he, to that extent, at least, exonerates the surety. *Per* HARRIS, P. J.

The proper inquiry, in every case, is not what degree of diligence the creditor has exercised in the collection of the debt; nor with what degree of negligence he is chargeable, but whether he has, *by his direct acts*, injured the surety. *Per* HARRIS, P. J.

IN EQUITY. On the 27th day of September, 1843, the plaintiffs recovered against the defendant as endorser of a note for $200, made by one Ellis, a judgment for $259,60. They had, on the 30th of March previous, recovered a judgment against Ellis for $843,68, upon other demands against him, including also the note endorsed by the defendant. A part of the judgment against Ellis was paid by his assignees. Subsequently an execution was issued for the balance of the judgment and levied upon personal property in his possession, which was advertised for sale. On the day of sale, and after a

portion of the property had been sold, an arrangement was made between the plaintiffs and Ellis and one McCumber, who claimed to be the owner of some of the property levied upon, whereby further proceedings upon the execution against Ellis were suspended. An assignment was executed by the plaintiffs to McCumber, as follows: "Supreme Court—Alrick Hubbell and Edward Curran *vs.* Joseph P. Ellis. For and in consideration of two hundred dollars, and other valuable con-. siderations, we hereby sell, assign and convey unto John McCumber the judgment and execution in this cause, and all the moneys due on the same, with the right at all times *to control the said execution;* and also, the following personal property: a quantity of cheese; one sow and six pigs; lot of hay in J. P. Ellis' shed; hay and straw in back shed, on both sides; hay in the bay; a quantity of barley; peas in the barn; oats in the field; span of horses, harness and wagon; pile of boards and all the property this day sold under and by virtue of an execution issued on the said judgment and bid in by us. *This assignment is not to impair the right of the said Hubbell and Curran to collect and enforce all the collateral securities with said judgment now in their hands.* It being understood that we hold no collateral securities except a judgment against Hiram Carpenter and a small balance on a note against McDonough. . Dated August 21, 1845.

HUBBELL & CURRAN."

At the same time the plaintiffs gave Ellis a receipt in the following words: "August 21, 1845. Received of Joseph P. Ellis one dollar, in full of all demands except a judgment in the supreme court in favor of Hubbell & Curran, against said Ellis, this day assigned to John McCumber; but this receipt is in no way to affect our rights and claims under a judgment in our favor against Hiram Carpenter, as the endorser of said Ellis. And we promise and agree not to enforce any claim under or by virtue of said judgment against said Ellis, in any way or manner whatever, or on the note upon which said judgment has been obtained.          HUBBELL & CURRAN."

About $300 had been paid to the plaintiffs by the assignees

of Ellis before the execution was issued. They had also received, upon a bond and mortgage which had been transferred to them by Ellis as security, about $320, and a note against one McDonough for about $46. The property upon which the execution was levied was worth about $500. The amount paid by McCumber on the 21st of August, 1845, was $200.

On the 17th of November, 1845, the plaintiffs commenced this suit. The bill was a creditor's bill containing the usual allegations. The answer set up the matters before stated, in defence. The cause was heard upon pleadings and proofs at the Albany special term in February, 1848, before Mr. Justice PARKER, who made a decree declaring the plaintiffs entitled to collect the amount of their judgment remaining unpaid, and directing a reference to ascertain such amount. (*See* 2 *Barb. Sup. Court Rep.* 484, *S. C.*) A rehearing having been ordered, the cause was reheard at a general term of this court.

*J. K. Porter*, for the plaintiffs.

*H. Carpenter*, defendant, in person.

HARRIS, P. J. I think the fair import of the instruments executed by the plaintiffs on the 21st of August, 1845, is, that in transferring the judgment against Ellis to McCumber, the plaintiffs intended to reserve such amount of the judgment as should be necessary to enable them to collect the judgment against Carpenter. And although they stipulated that they would refrain from all further proceedings for the collection of the amount of the judgment so reserved, from Ellis, it was understood that such stipulation should not interfere with their right to collect what they could of Carpenter. It was not denied, upon the argument, that the transaction was binding upon the parties; and the question is thus presented whether a creditor, after the recovery of a judgment against his principal debtor and his surety, may enter into such an arrangement as shall, in effect, release the former, without affecting his right to recover his debt of the latter.

Hubbell *v.* Carpenter.

There can be no doubt that such an agreement between the creditor and the principal debtor, *before judgment,* would operate to discharge the surety. The maker of a note is primarily liable for its payment; the endorser is considered as a surety for the performance of the maker's promise. (*Chitty on Bills,* 292.) And it is said that, although " there is no obligation of active diligence on the holder to sue the acceptor or maker, or any other party, and he may forbear to sue as long as he chooses, yet he must not so agree to give time to the acceptor or maker as to *preclude himself* from suing him and suspend his remedy against him in prejudice of the drawer or endorser." The rule is clear and indisputable that if, before judgment, the creditor do any thing which disables him from proceeding against the maker or acceptor, the endorser is discharged. He is entitled, as a matter of right, upon payment of the debt, to be substituted in the place of the holder. " The creditor," says Chief Justice Bronson in *Bangs* v. *Strong,* (7 *Hill,* 250,) " must be in such a situation that when the surety comes to be substituted in his place by paying the debt, he may have an immediate right of action against the principal." In the case under consideration it is admitted that the plaintiffs have, by a binding engagement, disabled themselves from proceeding against Ellis, the principal debtor. But it is insisted that the endorser lost his character of surety by the recovery of the judgment against him. It is true that there are not wanting respectable authorities which favor the position that the distinction between principal and surety ceases after judgment has been obtained upon the original security. Indeed, I am inclined to think that it is only by resorting to a court of equity, which is said to be the surety's peculiar forum, that he can, after his liability has been fixed by the recovery of a judgment, obtain the relief to which the transactions between the creditor and his principal may entitle him. In *Pole* v. *Ford,* (2 *Chitty's Rep.* 125,) which is made a leading case in sustaining the doctrine that the character of surety is extinguished by the judgment against the endorser, and that thenceforth he becomes a principal debtor, a motion was made to enter satisfac-

Hubbell *v.* Carpenter.

tion of a judgment against the drawer of a bill of exchange, or
that the plaintiff might be prohibited from issuing execution
upon the judgment, upon the ground that after having issued
execution against the acceptor and taken his property in exe-
cution, the plaintiff had abandoned his levy and given further
time for payment to the acceptor. The motion was denied,
and the report of the case states that the court determined that
the withdrawing the fi. fa. against the acceptor did not dis-
charge the drawer, and that the rule, that giving indulgence to
an acceptor without the consent of the drawer discharges such
drawer, *does not apply after judgment.* A similar motion
was made in *Braine* v. *Monson,* (8 *Mees. & Wels.* 668,) which
was also denied. In that case Parke, baron, said " the case of
*Pole* v. *Ford* is an express authority, that where judgment has
been signed against one of the parties to a bill or note, the
court will not interfere, *on affidavit,* to set aside the judgment
and stay proceedings in an action against another party. A
regular judgment cannot be affected by the discharge of a prior
party. There is no relief *unless there be a remedy in a court
of equity."* So in *La Farge* v. *Herter,* (3 *Denio,* 157,) it was
held, in an action of debt, brought upon a judgment which had
been recovered against a principal and surety, that the fact
that an execution had been levied upon the property of the
principal debtor and then withdrawn upon receiving security
to pay at a future day, did not constitute a legal defence to
the action. The court in deciding this case do not seem to
have had in mind the distinction between a defence at law and
relief in equity in such cases ; for the authorities cited by Jus-
tice Beardsley are, with the exception of *Pole* v. *Ford,* cases
arising in equity. Although none of these authorities are di-
rectly in point to sustain the decision, I am not disposed to
question its correctness. On the contrary, I think the con-
clusiveness of the judgment upon the parties to it, is sufficient
to exclude a defence at law founded upon the relation of prin-
cipal and surety existing between the defendants in the judg-
ment prior to its recovery. The form of the judgment rendered
the defendants alike liable as principal debtors, and perhaps,

after judgment, it was not in the power of a court of law to apply the principle which prevails as well in courts of law as in equity, in all cases where the relation of principal and surety can be recognized. But because relief may not be granted at law after judgment, it does not follow that the principle ceases to exist. The principle itself is founded in the moral injunction which requires every man so to exercise his own rights as not to injure others. Of course it is as applicable after judgment as before.

This question came before the supreme court of Pennsylvania, in the case of *The Manufacturers' and Mechanics' Bank* v. *Bank of Pennsylvania,* (7 *Watts & Serg*. 335.) In an elaborate opinion delivered by Chief Justice Gibson, he examines the position which had been contended for in that case, that the relation of surety which the endorser of a note had borne to the maker was extinguished by the judgment against him. "The engagement of the endorser," he says, "is to pay, if the maker do not. And the holder should not be allowed to compel him to pay after having first deprived him of the chance of being relieved by payment by the maker. It may be that his engagement ceases to be *conditional* at the rendition of the judgment; but he is not the less a *surety* and may yet be injured by the conduct of his principal. The root of the error seems to consist in taking for granted that when the engagement of the endorser ceases to be conditional he necessarily ceases to be a surety. The engagement of a surety in a bond is unconditional from the first; and his right to compel the obligee to sue would be of little avail were the latter bound to proceed no further than judgment. The surety might pay the debt, it is true, but it has been gravely doubted whether the judgment would not, *ipso facto*, be discharged. He is not, however, bound to pay it before he can at least indirectly originate an action on the security; it being clear, as was held in *Wright* v. *Simpson*, (6 *Ves.* 734,) that on depositing a sum sufficient to cover the expense he may compel the creditor to do the best he can for him by collecting the debt of his principal. And in that respect equity falls even behind the civil law, which

requires the principal to be sued in the first instance. In that case separate judgments had "been recovered against the maker and endorser of a note, on the 10th of May, 1841. On the 13th of October following, the plaintiffs in the judgments entered into a stipulation with the maker, to stay proceedings against him for one year, provided he should, on the 3d of November ensuing, pay the interest on the judgment up to the time when the new credit would expire. The interest not having been paid, the stipulation became inoperative, and yet it was held that, inasmuch as there was an effectual stay of proceedings from the time the stipulation was executed to the time when the interest was to be. paid, the endorser was discharged. (*See also Commonwealth* v. *Miller's Administrators*, 8 *Serg. & R.* 452.)

In *Dixon* v. *Ewing's Administrators*, (3 *Ohio Rep.* 280,) a judgment had been recovered upon a bond executed by a principal and two sureties. Execution having been levied upon the property of the principal, it was released. An attempt having been made, subsequently, to collect the judgment, of the sureties, they filed their bill to restrain the collection. The court say, " the judgment creditor was bound at least to let the law take its course without interfering to exempt the principal debtor or to relieve his property in such a way as to increase the risk of the sureties. He had no right to interpose for the protection of the principal or his property, by discharging either from the debt, to the injury of the sureties." A perpetual injunction was granted. The same question came before the court again in the case of *The Commercial Bank of Lake Erie* v. *The Western Reserve Bank*, (11 *Ohio. Rep.* 444.) In that case judgment had been recovered against two principal debtors and one Clarke as surety. Lane, Ch. J. says, "Whether a surety can claim his privilege after judgment, is a point which has given rise to conflicting opinions, and in recent cases the doctrine is doubted or denied. (*Pole* v. *Ford*, 16 *Eng. Com. Law*, 273. *Bay* v. *Tallmadge*, 5 *John. Ch.* 305. *Lenox* v. *Prout*, 3 *Wheat.* 520.) But I am instructed by my brethren to announce it as the opinion of a majority of the court,

Hubbell *v.* Carpenter.

that they entertain no doubt of Clarke's right to assert this privilege."

The same doctrine has, I think, been substantially held by the court of chancery of this state, and concurred in by the court for the correction of errors. *Bangs* v. *Strong,* (10 *Paige,* 11,) was a creditor's bill filed against two judgment debtors, J. Strong and M. Strong. The defendant M. Strong interposed a plea in bar, alleging that the judgment was recovered upon a bond in which he was merely a surety for J. Strong. And that after the recovery of the judgment an agreement had been entered into between the plaintiffs and J. Strong, the principal debtor, whereby the plaintiffs were to receive the conveyance of certain land, the price of which was to be ascertained by subsequent appraisal, in part payment of the judgment, and giving ten month's further time for the payment of the balance. The chancellor held, upon the state of facts presented by the plea, that the surety was discharged, upon the ground that the agreement had the effect to prejudice his right to substitution. Justice Bronson, in pronouncing the unanimous decision of the court of errors, affirming the decree of the chancellor, says : " Where time is thus given to the principal debtor, by a valid agreement, which ties up the hands of the creditor, though it be but for a single day, it is quite clear that the surety is discharged." It is true, as was remarked by the learned justice whose opinion is the subject of this review, that the distinction between the rights of a surety, before and after judgment, does not seem to have been taken by the counsel for the plaintiffs in that case ; nor is it discussed in the opinion either of the chancellor or Justice Bronson. Yet it must also be admitted that the precise question was there involved, and if the distinction sustained by my learned brother exists, that case was erroneously decided. I should be unwilling to come to this conclusion until constrained by opposing authority entitled to equal respect. Such authority is supposed to be found in three cases which I propose briefly to examine.

The first, in point of time, is that of *Lenox* v. *Prout,* (3 *Wheat.* 520.) In that case Prout was endorser of a note made

by one Deblois. Judgments having been recovered against both maker and endorser, the plaintiffs, at the request of Prout, who offered to point out to the marshal property of Deblois upon which he could levy, issued an execution against the latter, but countermanded it before any thing further was done. The circuit court, in which a bill had been filed by the endorser, granted a perpetual injunction to restrain the collection of the judgment against him. The decree was reversed upon appeal. Justice Livingston, in delivering the opinion of the court, holds the following language : " When the creditor has proceeded to judgment against both, he is at liberty to issue an execution or not, as he pleases, on the judgment against the maker, without affording any cause of complaint to the endorser ; or if he issues an execution he is at liberty to make choice of the one which he thinks will be most beneficial to himself, without any consultation whatever with the endorser on the subject. Nor ought he to be restrained, by any fear of exonerating the endorser, from countermanding the service of any execution which he may have issued and proceeding immediately, if he chooses, on the judgment against the endorser. And the reason is obvious; for by the judgment they have both become *principal debtors,* and if the endorser suffers any injury by the *negligence* of the judgment creditor, it is clearly his own fault, it being his duty to pay the money, in which case, *he may take under his own direction the judgment obtained against the maker.*" There is nothing in the decision, or in the reasons upon which it is founded, at all in conflict with any of the cases already noticed. All agree that mere forbearance or delay in collecting from the principal debtor furnishes no ground upon which the surety can claim to be exonerated. To entitle the surety to relief there must have been some active interference of the creditor, operating to the prejudice of his right of substitution. It is true, as was said by the learned judge, that if Prout suffered, it was his own fault. When the creditor refused to proceed with the execution, if he would have protected himself, he should have paid the judgment against the maker of the note, and thus himself have obtained the control of it. The creditor had

done nothing to prevent his doing this, and therefore it was properly held that the surety was not absolved from liability.

The next case is *Bay* v. *Tallmadge,* (5 *John. Ch.* 305.) There Tallmadge had sued one Platner, and Bay and Bachman had become bail to the arrest. Special bail not being put in, Tallmadge brought a suit against Bay and Bachman upon their bond, and recovered judgment against them for the amount of his debt against Platner, with interest and costs. Upon this judgment an execution was issued, and levied upon the property of the defendants. It was then agreed between the parties to the bail bond suit, that a judgment should be perfected against Platner, and that proceedings in the bail bond suit should be stayed, until the event of the measures taken to recover the debt of Platner should be ascertained. Under this agreement an execution was issued against Platner, and his property advertised for sale. The sale was once postponed, with the consent of the bail, and against the will of the plaintiff. Subsequently a further postponement was agreed to by Tallmadge, without the assent of the bail, who filed their bill against the plaintiff in the judgment, praying that he might be restrained from further proceedings against them, on the ground that by the postponement of the sale without their consent they were discharged from their obligation to pay the debt. Chancellor Kent held that the bail had lost their privileges and had become fixed as principal debtors; that all they had a right to require was the fulfilment of the agreement in good faith, which implied nothing more than reasonable diligence in making efforts to collect the debt of Platner; that such efforts were to be made under the guidance of a reasonable discretion, and as it appeared that the postponement of the sale was granted in good faith and from humane motives towards the debtor, it would not be consonant to the principles of a court of equity to punish the creditor with the loss of his debt for a reasonable forbearance to the debtor; *that " it would be giving too severe and rigorous a construction to the agreement."* The chancellor adds, " if Bay and Bachman were dissatisfied with the second adjournment, they should have come forward and offered

payment and called for an assignment of the judgment for their indemnity." Thus the chancellor recognizes the right of the bail to substitution. And it is evident from the facts of the case that nothing had been done to impair this right. No security had been relinquished, and there was no binding agreement for delay. Upon no principle applicable to the relation of principal and surety could the bail justly claim that they had been absolved from their obligation to pay the debt.

One other case deserves to be noticed. It is that of *Findlay,s Executors* v. *The Bank of the United States*, (2 McLean, 44.) There a judgment was recovered by the bank against Sutherland and Findlay—against the former as maker and the latter as endorser of a note. The judgment had become a lien and an execution had been levied upon the real property of Sutherland. After this, by an arrangement between Sutherland and the bank, his property was conveyed to the bank and applied upon his other indebtedness to the bank, leaving the property of Findlay liable for the judgment against him. Upon a bill filed by the executors of Findlay, for relief, Mr. Justice McLean held that, though Findlay had been an accommodation endorser for Sutherland, his character as surety was merged in the judgment, and that the only equity remaining in his favor was the right of substitution, on the payment of the judgment. That case undoubtedly goes the entire length of deciding that, *after judgment*, the liability of the surety is in no respect affected by the acts of the creditor; and that, whatever may have been done to impair his security, he is bound, absolutely bound, to pay the judgment.

I certainly am not disposed to undervalue the decision of a judge so enlightened, presiding in a court of such eminence, and I might feel inclined to bow to the authority, were it not as I conceive, opposed to the opinions of other judges, equally distinguished, as well as contrary to my own views of common justice. The doctrine of every other case with which I have met in my researches, which have been somewhat diligent, is, that on the one hand there is no duty of active diligence imposed upon the creditor for the protection of the surety; and on

the other hand, that if by his own active interference the creditor suspend his own right, and of course the right of the surety, if he shall come to claim his privilege of substitution, to proceed in due course of law to collect the debt of the principal debtor, or if he relinquish any security he may hold for his debt, or surrenders any funds he may hold applicable to its payment, he, to that extent at least, exonerates the surety. The rule is founded in equal justice. While nothing is required to be done by the creditor for the benefit of the surety, it is also required that nothing shall be done to his injury. The proper inquiry in every case is not what degree of diligence the creditor has exercised in the collection of the debt, or with what degree of negligence he is chargeable, but whether he has by *his direct acts* injured the surety. In the case before Judge McLean, the lien of the judgment and the levy of the execution upon the property of the principal debtor, was a security in the hands of the creditor available for the relief of the surety. To relinquish that security was to injure the surety by the direct act of the creditor. And when the fact is added that the security was relinquished for the purpose of applying the property to the payment of another debt against the principal debtor, less secure, it amounts to a breach of moral duty.

So far as he relies upon adjudged cases, Judge McLean, after first expressing his dissent to the opinion of the supreme court of his own state in the case of *Dixon* v. *Ewing's Adm'rs* before noticed, confines himself to the cases of *Lenox* v. *Prout* and *Bay* v. *Tallmadge.* In respect to the former he says, "it is a case similar in principle and not dissimilar in fact." And in *Bay* v. *Tallmadge*, he says Chancellor Kent has decided the same principle. But I must be permitted to say that I have entirely misapprehended as well the facts as the principle involved in both those cases if they contain any thing which sustains the decision in *Findlay* v. *The Bank of the United States.* Whether right or wrong, I think that decision must be regarded as standing unsupported by any other authority either in England or this country.

Since my examination of this question I have met with an

able and well reasoned opinion upon the same question by Mr. Justice Allen, in *Storms* v. *Thorn*, (3 *Barb. Sup. Court R.* 314.) My confidence in the correctness of the conclusions at which I had arrived is not a little strengthened, upon finding that the examination of the question by that learned justice had led him to the same result.

The application of the principles, thus deduced, to the case at bar is obvious. By the arrangement between the plaintiffs and Ellis and McCumber, on the 21st of August, 1845, they abandoned the means in their hands which might have proved available for the indemnity of Carpenter. They did more. They not only relinquished their levy, but they in effect released Ellis from all further obligation to pay that part of their debt for which Carpenter had become liable as endorser. Suppose, after this transaction Carpenter had come to the plaintiffs and paid their debt and claimed his right to be substituted in their place as against Ellis, the principal debtor. What could he have acquired by an assignment from the plaintiffs? They had bound themselves not to collect the debt of Ellis, and of course they could not confer upon another the power of doing what they had bound themselves not to do. Having thus disabled themselves from collecting their debt of the principal debtor, or transferring the right to enforce collection to the surety upon his paying the debt, they must be held to have exonerated the surety also. The bill should therefore be dismissed with costs.

WATSON, J. concurred.  PARKER, J. dissented.