JOHN MARSHALL *v.* DANIEL AIKEN, HIRAM AIKEN, AND HARRISON DUNHAM.

*Debt on judgment. Pleading. Principal and surety.*

A plea in bar, which alleges the giving of time to the principal, without the knowledge or consent of the surety, upon a *good and valuable consideration*, without setting out the consideration, is bad.

A demurrer admits such facts only as are well pleaded.

The judgment upon a note operates as a merger of the note, and at law it becomes so far *conclusive* upon the parties to it, as to exclude a defence growing out of the relation of *principal* and *surety*, existing between the defendants in the judgment prior to its recovery.

*Query.* Whether, after judgment against a surety, his character as surety is not at an end, and as against the creditors, he can no longer claim the privileges of a surety.

DEBT on judgment. Plea—*nul tiel record*, and four pleas in bar by defendants, Hiram Aiken and Harrison Dunham. The first plea in bar set forth that the judgment, in the declaration mentioned, if any such there be, was founded upon a certain promissory note, bearing date the 10th day of August, A. D. 1844, wherein and whereby the defendants jointly and severally promised the plaintiff to pay him or his order the sum of $450, in one year from the date of said note, with interest annually; and that said Hiram Aiken and Harrison Dunham executed said note, at the solicitation of the said Daniel Aiken, as sureties; that said Daniel received

Marshall *v.* Aiken et al.

the whole consideration of said note, and became, and was, and still is, the sole principal in said note, and in said judgment, thereon founded.

That after the recovery of said judgment in the declaration mentioned, to wit, on the 8th day of December, A. D. 1846, the plaintiff sued out his writ of execution; that one Solomon Downer afterwards became the purchaser and assignee of said judgment and execution, by contract with the plaintiff, and entitled to receive and demand payment thereof, and in all respects to control the .same. And that while the said Downer was so the owner of the said judgment and execution, as aforesaid, the said Downer, for a valuable consideration, paid to him by the said Daniel Aiken, did promise and agree with the said Daniel Aiken, that he, the said Downer, would delay the collection of said execution for the term of three years, and that said Downer had knowledge that said Daniel Aiken was alone the principal upon said promissory note, &c. The second plea in bar sets forth, that said Downer, well knowing that said Daniel Aiken was principal, and that said Hiram Aiken and Harrison Dunham were sureties on said note and judgment and execution, for a valuable consideration paid to him, the said Downer, by the said Daniel Aiken, did agree to and with the said Daniel, that he, the said Downer, would stay the. collection of said execution for the term of one year, &c.

The third plea in bar set forth, that said Downer, in consideration that said Daniel Aiken would pay the interest upon the amount due on said judgment and execution in advance, he, the said Downer, would stay the collection of the same for one year, &c.

The fourth plea in bar set forth, that the said Downer, in consideration that the said Daniel Aiken would purchase of the said Downer certain property, amounting to the sum of $378,58, and would then and there execute and deliver to said Downer, his, the said Daniel Aiken's note, payable in five years, with interest annually, which said note was secured by mortgage on certain premises in the town of Barnard, with.condition in said deed, that if the said Daniel Aiken should fail to pay the interest according to the tenor thereof, then the principal therein should become due, and payable absolutely, he, the said Downer, did promise and agree to and with the said Daniel Aiken, that he, the said Downer, would delay the collection of said execution for the term of three years, &c.

To the first and second pleas in bar, the plaintiff demurred, and to the third and fourth replied, traversing all the allegations contained in said third and fourth pleas; to which replications the defendants demurred.

The County Court, December Term, A. D. 1852,—COLLAMER, J., presiding,—on inspection, found there was such a record, and decided that said first and second pleas in bar were insufficient, and that the replications to the third and fourth pleas in bar were insufficient, and *pro forma*, rendered judgment that there is such a record, and the replications to the said third and fourth pleas are insufficient, and rendered judgment for the said Hiram Aiken and Harrison Dunham, and against the said Daniel Aiken.

Exceptions by plaintiff.

*W. C. French, and Tracy & Converse* for plaintiff.

I. In the first and second special pleas, no consideration is alleged for the pretended agreement. The only allegation in either plea is, that the agreement for delay was made " for valuable consideration."

This is clearly bad. It is a general rule, *to which there is no exception*, that in counting or declaring upon a contract, not under seal, it is necessary fully to state the consideration upon which it is founded. 1 Chit. Pl. 321, 326, and 327, and cases cited. 1 Saund. 211. 1 Greenleaf, Ev. § 66.

II. The third plea we think equally bad. The consideration alleged is the payment of one year's interest in advance. The payment of such interest would operate as payment *pro tanto* upon the judgment. It has been held not to be a sufficient consideration for a promise in Mass. *Oxford Bank* v. *Lewis*, 8 Pick. 458. This view is sustained by the decisions of our own courts. *Mason et al.* v. *Peters*, 4 Vt. 101. *Reynolds* v. *Ward*, 5 Wend. 501.— *Blackstone Bank* v. *Hill*, 10 Pick. 129. *Freeman's Bank* v. *Rollins*, 13 Maine, 202.

III. The fourth plea is equally defective. There is no *sufficient consideration* alleged in the plea for the pretended promise of delay. 2 Kent's Com. 463. 1 Chit. Pl. 321.

The neglect to allege that said purchase was a part of the transaction for delay, is a fatal defect. *Livingston* v. *Rodgers*, 1 Caine, 583. *Comstock* v. *Smith*, 7 Johns. 87.

IV. Are the *traverses* to the third and fourth pleas bad, for duplicity?

It is a general rule, that a traverse must be confined "*to a single point or ground of defence;*" but this "*single point or ground*" may consist of any number of facts. Gould's Pl. 406, § 49. 1 Chit. Pl. 647.

A denial of *all the facts* alleged in a plea cannot be bad, for duplicity. *Torrey* v. *Field*, 10 Vt. 353. *Tucker* v. *Ladd*, 7 Cow. 450. *Strong* v. *Smith*, 3 Caine, 160. *Patchen* v. *Sprague*, 2 Johns. 466, 3 Vol. U. S. Dig. 157.

V. We claim that the *subject matter* of the special pleas, under whatever form it may be pleaded, constitutes no defence to this suit in favor of any of said defendants.

If this was an action on a promissory note, the subject matter of the defence would be good; but we claim that the same doctrine does not apply *at law* to actions upon judgments or bonds. The same rule should apply to *judgments* as to *bonds*, and it has been repeatedly held that it does not apply to bonds at law. *Davy et al* v. *Pendergrass*, 7 E. C. L. 62, 8 U. S. Dig. 340, sec. 53 and 54, and cases cited. 10 Peters, S. C. 257.

Such, uniformly, have been the decisions as to judgments *at law*, so far as we have been enabled to trace them, although a different rule has in some cases prevailed in chancery. U. S. Dig. Vol. 8, p. 340, § 45. 9 U. S. Dig. 408, §§ 27, 28, 29, and 30. 10 U. S. Dig. 402, § 53.

*Washburn & Marsh* for H. Aiken and Dunham.

I. The defendants' demurrer was well taken to the replication to the fourth plea. Gould's Pl. 420, § 3—406, §§ 49, 50, 51, 52. In *Rex* v. *Hughes*, 4 B. & C. 368, HOLROYD, J., says: "It is a fundamental principle of pleading, that you must confess and avoid, or traverse, some one material fact; and the same rule applies to replications as to pleas." *Morse* v. *Hinds*, Addison Co. January Term, 1851, (not reported.)

This replication traverses four distinct points of defence.

1. *That Daniel Aiken was principal.* And this involves two distinct facts, both of which are in terms traversed. 1. That defendants signed the note by procurement of Daniel Aiken. 2. That Daniel Aiken received the whole consideration for the note.

Marshall *v.* Aiken et al.

2. *That Downer knew that Daniel Aiken was principal.*

3. *That an agreement for delay was made by Downer with Daniel Aiken.*

And under this point the replication in terms puts in issue *four distinct facts.* 1. The making of the agreement alleged. 2. The consideration alleged. 3. The time of extension alleged. 4. The payment by Daniel Aiken to Downer of the consideration alleged.

II. *The defendants' demurrer was well taken to the replication to the fifth plea.*

*This replication also puts in issue four distinct points.*

1. *That Daniel Aiken was principal.* And under this, the replication also traverses *two distinct facts* alleged. 1. That defendants signed the note by the procurement of Daniel Aiken. 2. That Daniel Aiken received the whole consideration for the note.

2. *That Downer purchased the judgment as alleged.* And under this, the replication puts in issue *two distinct facts.* 1. Whether Downer purchased the judgment. 2. Whether he did so at the request of Daniel.

3. *That Downer had agreed to give time.* And under this, the replication traverses *four distinct facts.* 1. The making of the agreement. 2. The consideration alleged. 3. The time of extension alleged. 4. That Downer knew that Daniel was principal. *Regil* v. *Green,* 1 M. & W. 328. *White* v. *Reeves,* 4 E. C. L. 403.

III. The statement of the consideration for the agreement alleged in the second and third pleas is sufficient, and the defendants are entitled to judgment upon those pleas.

The defendants, not being parties to this agreement, are not to be presumed cognizant of its terms, and cannot be required to set forth the agreement with more particularity than they would be required to prove it.

The production of a promise in writing made by Downer, *"for value received,"* or *"for valuable consideration by me received,"* to give time, would sustain the defence made by the sureties. So would proof of an *admission* by Downer, that, *for valuable consideration to him paid,* he had agreed to give time.

The demurrer admits all this. It is an admission of record, that, for valuable consideration by him received, he had agreed to give an extended time for payment, and did delay collection of the debt for the time agreed; and this is all that is necessary for the defence.

Marshall *v.* Aiken et al.

A demurrer is never well taken, which admits, in terms, all that the defendants would be required to prove, to entitle them to a verdict.

IV. It is no objection to the pleas, that the debt has passed into a judgment. The defendants still retain their rights and position, both as between themselves, and as to the creditor of principal and surety. *Vilas et al. v. Jones et al.,* 10 Paige, 76. *Bangs et al.* v. *Strong,* 7 Hill, 250. S. C. 4 Comst. 315.

The opinion of the court was delivered by

BENNETT, J. The two pleas in bar, which allege the giving of time to Daniel Aiken, without the knowledge or consent of the sureties, upon a *good and valuable consideration,* received of the principal, are clearly bad, in any event.

The consideration upon which an assumpsit is founded, must be set out in the declaration, that the court may see that it is a good and valuable one, or in other words, that it is *legally* sufficient.

It is not for the pleader to do this. It is equally necessary, and for the same reason, that the consideration should be set out in these pleas. If the agreement to give time to the principal is not upon valuable considerations, it is no discharge to a surety. It is said in argument, that the demurrer admits a consideration; but a demurrer admits such facts only as are well pleaded. The first and second pleas are bad for this, if for no other reason.

The *consideration* for the promise set up in one of the remaining pleas, for giving time to the principal debtor, was the payment of the *interest* on the judgment in *advance.* It is a common principle, that the payment of a sum of money before it becomes due, is a sufficient consideration to sustain a promise.

The payment of interest, which might accrue on the judgment, could not be enforced in advance, and the court cannot say that the consideration was inadequate, and therefore not binding. It is said in the old books, that even a *pepper-corn* is a sufficient consideration to support a promise. It must be left to the parties to make their own contracts.

We have no doubt that a *sufficient* consideration is set forth in the remaining pleas. If there be any *prejudice to the promisee,* though trifling, it is a sufficient consideration. The consideration set out is, that if Daniel Aiken would buy of Downer certain prop-

erty, at a given price, &c., and secure the payment thereof, by his note and mortgage, he would give time, &c.  Here Daniel Aiken undertook to perform certain acts at the request of Downer; and the performance of those acts, that is, the reception of the note, and the purchase of the property, and the giving his own note for the same, and mortgage, constitute a sufficient consideration, even without damage to the promissee; but if Aiken was induced to buy property of Downer at a price agreed upon, to gain time on the judgment, while he otherwise would not have bought, it may well be apprehended he suffered loss, though this may not necessarily appear from the record.

The replication to these pleas is a *general traverse*, denying all the material facts, and to the replications, general and special demurrers have been filed, and among the causes assigned, are *duplicity* and *multifariousness*.  We think this is not a case in which the plaintiff can reply *de injuria*.  The matter relied upon as a defence, is not *matter of excuse;* but if it could avail the party, it would be matter in discharge of the obligation of these two defendants.  The general rule is, that *de injuria* is only proper in cases where the matter traversed is *matter of excuse.*  If this was a proper case for a general traverse, it would not be bad for duplicity or multifariousness, I apprehend.  The replication *de injuria* always puts in issue *multifarious matter*, and where it is allowable, it forms an exception to the general rules of pleading.

In cases where the replication *de injuria* is allowable, the party may probably reply in that form, or traverse the *material facts* in the plea, in the terms in which they are alleged, at his election.  If, in a case of this kind, the replication *de injuria* was to be allowed, the advantage to be gained by special pleading, which is to narrow the point of controversy between the parties, would, in a good measure, be lost.  The grand object of special pleading is to *narrow* the point in dispute, and save costs to the litigant parties.

The replication, then, upon principle, must be held bad; still it may be good enough for bad pleas.

The question then arises, are the pleas sufficient to discharge the sureties in an action at law, from the judgment, going upon the ground that the agreements set up in them were made upon valuable consideration?  This, no doubt, is a question, about which there may be, and has been, two opinions.  The question with us

is, *res integra*, and we are disposed to consider it upon principle. The judgment upon the note operated as a merger of the note, and we think at law, at least, it became so far *conclusive* upon the parties to it, as to exclude a defence growing out of the relation of *principal* and *surety*, existing between the defendants in the judgment prior to its recovery.

It has frequently been said, that whatever will discharge a surety in equity, will discharge him at law; but I apprehend this is not always true. The court of equity was the *peculiar* and *original forum of the surety*, and there can be no doubt, that in many cases, the surety has been held to be discharged at law, by the application of principles to the case, which were purely of an equitable character; and I apprehend, that upon principle, to produce a *legal discharge* of the surety, there must be a variation of the original contract, and a resulting waiver of its performance by the principal, founded upon an agreement for a valuable consideration; and that an ageement to vary it, not legally binding, is not sufficient at law, even if it can be made so in chancery. If the surety can insist, that the old contract has been waived, and a new one substituted between the creditor and the principal, without his consent, he may well stand upon the ground that he has made no such contract, as a surety. But if a declaration on the original contract against the principal could not be defeated by evidence of the alteration, it appears to me, upon principle, the same result must follow at law, where the action is against the principal and surety, and that if the action could be defeated as to the surety, it would also be defeated as to the principal. If the defence is a *nullity* as to one, it must be so, on principle, as to both, at law; and in the case of *Farmington* v. *Myers*, 10 Ohio, 543, where the matter of defence was only good for the surety, it was thought necessary to turn the surety over to a court of equity for relief.

In the case before us, it is not claimed that the matter of defence set up by the sureties was good for Daniel Aiken, and indeed the judgment was against him in the court below. It is established by many cases, that after judgment against a surety, his character, as surety, is at an end, and he cannot, *as against the creditor*, any longer claim the privileges of a surety, and that it is then too late to inquire into the antecedent relations of the parties; and this principle has sometimes been applied without any distinction, between

a defence at law, and cases in which relief has been sought by the surety in equity. It is quite possible, that a distinction may well be taken.

It is maintained by the majority of the court in *Hubbell* v. *Carpenter*, 5 Barb. 520, that there is a well grounded distinction, but this is not now a point before us. All that is necessary for us now to decide is, that the matter set up in bar of the action on the judgment cannot avail at law. *Pole* v. *Ford*, 2 Chit. R. 125.— *Braine* v. *Monson*, 8 M. & W. 668. *Lenox* v. *Prout*, 3 Wheaton, 520. *Bay* v. *Tallmadge*, 5 Johns. Chan. 305. *Finsley's Executors* v. *Bank U. S.*, 2 McLane, 44. *LaFarge* v. *Herton*, 3 Denio, 157. *Naylor* v. *Moody*, 3 Blackford, (Indiana,) 93. *Deberry* v. *Adams*, 9 Yerger, (Tennessee,) 52.

In the case of *Bull* v. *Allen*, 19 Conn. 101, it was held, that in the case of a joint and several promissory note, one of the signers was estopped from showing that he signed the note as surety, for the purpose of letting in a defence founded on the refusal of the holder to sue the principal.

We are aware that in Massachusetts and in Pennsylvania their courts have held that the surety in no way ceases to retain the character of a surety, by reason of the demand having passed into judgment against the principal and surety. But it should be remembered that in those states, they have no courts with ordinary chancery powers, to which they could turn the surety over for relief, and how much that consideration might have weighed with the common law courts, in holding that the judgment was no merger of the relation of principal and surety with reference to the creditors, I cannot say.

The reports of the cases do not, I believe, assign that as a reason for the decisions. We do not suppose that the judgment in any way affects the relation between the principal and surety. They stand as before, between themselves.

On the whole, we think all the pleas in bar are bad, and the judgment of the County Court is reversed, and judgment against all the defendants for the amount due, and costs.