ELBRIDGE G. FULLER *versus* SETH LORING.

By the seizure of goods on execution the officer acquires only a special property in them. The general property remains in the debtor until the goods are sold.

If the officer wastes the goods seized, or misappropriates the money derived from the sale of them, or fails to return the execution, the debtor is thereby discharged.

A creditor holding a demand against a principal debtor and surety, may attach the property of either. He is not bound to resort to the debtor's property first, in order to collect the debt.

A. held a note against B. as principal and C. as surety, upon which he brought a suit, and recovered judgment against both. Upon the execution which issued on that judgment an officer, by the direction of A.'s attorney, seized and advertised for sale certain property of B. After such seizure and notice of sale, another officer in another county, by direction of A.'s attorney, seized and sold on the same execution certain property of the surety C. After this the said property of B. was sold as advertised. C. then brought his action of trespass against A., claiming that the seizure and advertisement of B.'s property, followed by its sale on the execution, protected his (C.'s) property from seizure and sale on the execution, B.'s property having been shown to be ample to satisfy the execution : — *Held*, that the property of C. was legally sold and that he could not maintain his action against A.

[But see *Springer* v. *Toothaker*, 43 Maine, 381.]

ON REPORT from *Nisi Prius*, HOWARD, J., presiding.

This was an action of trespass. The general issue was pleaded and joined.

It was proved, subject to all legal objections, that the defendant, on the thirtieth day of October, 1849, sued out a writ of attachment against one Charles Higgins and the plaintiff, upon a note of hand given by said Higgins as principal and the plaintiff as surety; the said Higgins residing at Lewiston, then in the county of Lincoln, and the plaintiff at Turner, in Oxford county.

The plaintiff, at the June term of the District Court, 1850, for Oxford county, recovered judgment in that suit for $80,62, debt, and $17,85 cost. The plaintiff's attorney caused a certain building or shop, situate at said Lewiston, to be attached on said writ, at 5 o'clock P. M., by one Benjamin Dunn, a deputy sheriff for said county of Lincoln. The plaintiff took

out execution on his judgment, and within thirty days from the rendition thereof, S. P. McKenney, his attorney, caused the said execution to be placed in the hands of Dunn, or showed it to him, with directions to seize and advertise the building; and told Dunn that he would return the execution in season to have it sold. Before the sale of said building, McKenney placed the said execution in the hands of Philo Clark, a deputy sheriff for the county of Oxford, with directions to seize and sell the property sued for in the plaintiff's writ; and the said Clark did thereupon, on the 15th day of July, 1850, seize said property, and afterwards sold the same, as appears by his return on the back of said execution; said execution having had no return by said Dunn on it at that time.

The execution was then replaced in the hands of said Dunn, who thereafter sold the building aforesaid, as appears by his return on said execution.

It was further proved, that the defendant's attorney, on the same 30th day of October, 1849, sued out a writ of attachment in defendant's favor, against said Charles Higgins, upon a note against Higgins alone, and caused the same building to be attached on said writ, upon the same day. The writ was entered at the next November Term of the W. D. Court for Oxford county, to which the same was returnable, and the action was continued from term to term until the November Term of said Court, 1850, when the plaintiff recovered judgment against Higgins for $31,20 debt, and $12,56 cost.

*George A. Mitchell,* for the plaintiff, testified, that he was present at the sale of the goods and chattels sued for in this writ. The sale was made by Philo Clark, and he, the witness, purchased the same; that there was at that time, and before, in the possession of the plaintiff Fuller, a lot of boards, bed posts, nails, glass, joist, and other property, of the value of about $200 there; and in a house near there, which Clark did not sell, a part of which, viz., some joist and bass-wood boards, were mentioned in the said Clark's notice or advertisement of the sale, of the value of $25; that at the time of

the sale the plaintiff told Clark he had better not sell; and that if they would sell the building attached at Lewiston, and it did not bring enough to pay the debt and cost, he would pay the balance.

*Danville A. Ricker*, for the plaintiff, testified, that in the fore part of July, 1850, he was at the store of one Blake, in Turner, and there heard a conversation between the defendant and Blake about this matter. Witness asked defendant if he had attached Fuller's lumber, and he said he had, or Clark had done it. Witness asked him why; and the defendant said he had a note against Higgins of Lewiston, and the plaintiff Fuller, was holden on it as surety. He thought the note was near $100, and he had a lien on a shop or building at Lewiston for it. Witness then asked defendant why he attached plaintiff's lumber if he had a lien on the shop at Lewiston. He then said he wanted his money, as he had worked hard for it; and he had another note against Higgins, but smaller than the other. He knew the shop at Lewiston, and had seen it, and thought the shop without any land worth $300. This conversation was before the sale of the lumber by Clark.

*S. P. McKenney*, called by defendant, said he was defendant's attorney in the two suits, and that he never had any instructions from the defendant as to attaching the property sued for in this action. On cross examination, he testified, that when defendant left the notes with him for collection, he simply told him to collect them; and that he took said execution, *Loring* v. *Higgins & al.*, and gave it to Mr. Dunn at Lewiston, and told him to advertise said building, and then took it to said Clark and told him to seize and sell the property which is sued for. I received the money on both executions for defendant and paid it over to him.

*Philo Clark*, for defendant, testified, that he received said execution, *Loring* v. *Higgins & al.*, from Mr. S. P. McKenney, who directed him to attach and sell the property sued for; that he supposed he did sell all the property he attached, but the advertisement produced, which was in his handwrit-

ing, mentioned some joist as attached, which he did not sell; witness thought he should not have advertised any joist if he had not attached them. Did not sell the clapboards attached because Mr. Ludden claimed them; he did not recollect as he had any direction to sell to any particular amount, or to a less amount than the sum due on the execution. He was not aware at the time that the plaintiff Fuller, had other attachable property, and he had no directions from the defendant to attach the property sued for.

The case was taken, by consent, from the jury, and the parties agreed that the Court, upon the whole case, or so much of the testimony and facts stated, as were legally admissible, (the Court being at liberty to draw such inferences from the testimony as a jury might,) may enter a nonsuit, or default, as the law in the case may require; and if plaintiff recovers, the defendant is to be heard in damages.

*Seth May,* for plaintiff.

The seizure and sale of personal property upon an execution, is a satisfaction of such execution from the time of the seizure. In the case of *Ladd* v. *Blunt,* 4 Mass. 402, C. J. Parsons says:—"When goods, sufficient to satisfy the judgment, are seized on a *fieri facias,* the debtor is discharged, even if the sheriff waste the goods, or misapply the money accruing from the sale, or does not return his execution; for, by a lawful seizure, the debtor has lost his property in the goods;" *a fortiori,* then, a seizure, and a subsequent sale upon the execution, is a satisfaction. And there is much good sense in the rule; the debtor has parted with sufficient personal property to pay his debt; the officer is the agent of the creditor in collecting it; and if he fails to do his whole duty, the creditor has a full and adequate remedy on the sheriff's bond. By the proceedings in this case, by Dunn, the deputy, at Lewiston, the defendant's execution was satisfied and discharged, though no entry of satisfaction was made thereon. *Hammatt* v. *Wyman,* 9 Mass. 138.

In the case of *Chandler* v. *Furbush,* 8 Greenl. 408, the case of *Ladd* v. *Blunt* is affirmed; and Weston, Judge, says:—

"In *Ladd* v. *Blunt*, PARSONS, C. J., distinguishes between a seizure of goods on execution and an extent upon land. By the former, the debtor is discharged, although the sheriff mis-apply or waste the goods, or does not return the execution." See *Hoyt* v. *Hudson*, 12 Johns. 208, where the same doctrine is laid down.

The building or shop which was seized and sold by Dunn, being personal property, according to the authorities cited, (and I find none to the contrary,) would, if sufficient, be a payment and satisfaction of the execution the defendant had against Higgins and the plaintiff. It would be so as it regards Higgins, the principal; and much more so against the plaintiff, who was a mere surety. The law delights in the protection of sureties, and often compels the holder of the debt to dispose of the debtor's property on which he may have a lien in such a way as to relieve the surety. In the case of *Furbush* v. *Willard*, 16 Pick. 42, where personal property and an equity of redemption, were attached, the officer was held to apply the personal property in such a way as to re-lieve a *bona fide* purchaser of the equity of redemption; and, for the same reasons, a surety should be protected. If the creditor take property from the principal debtor, as a pledge or security for the debt, he is bound to hold it for the benefit of the surety; and if he give it up without his consent, the surety is discharged to the amount given up. *Baker* v. *Briggs*, 8 Pick. 122. The same rule should apply to a lien created by attachment. It is true, the creditor may not be obliged to make an attachment, even at the request of the surety, without an offer of indemnity; but if he does make it he must hold on to it; neither is he obliged to take a pledge or security; but if he does he must hold on to it.

A surety, who pays the debt for his principal, is entitled to be put in the place of the creditor, and to all the means which the creditor possessed to enforce payment against the debtor. *Clason* v. *Morris*, 10 Johns. 524; *Norton* v. *Soule*, 2 Greenl. 341.

But it may be said, that the defendant in this suit caused

the shop or building attached in the suit against Higgins and this plaintiff, to be attached on the same day in another action against Higgins alone. If he did so, it was not until he had caused it to be attached in the suit against Higgins and the plaintiff. In this last case, the attachment was made, as appears by the officer's return, at 5 o'clock P. M. In the other suit it was made on the same day; but no hour is mentioned in the return. It might, therefore, have been made at the last hour of the day. In such case, it is settled by this Court, that the attachment, made at a particular hour specified in the return, takes precedence of the other. *Fairfield & al.* v. *Paine*, 23 Maine, 498.

We say, then, that the attachment of the building at Lewiston, its sale upon the execution, *Loring* v. *Higgins* and the plaintiff, by Dunn, under the direction of McKenney, the attorney of Loring, was a satisfaction of that execution; and all the acts done by Loring, or by direction of his attorney, in the county of Oxford, in regard to the seizure and sale of the property of the present plaintiff, were tortious and wrongful, and this action will lie to repair the injury which he has sustained. The law will not thus permit the rights of a surety to be trampled under foot.

The acts of the attorney in this case, are the acts of the principal himself. " *Qui facit per alium facit per se;*" and especially, when he receives the fruit of those acts.

Defendant told Danville A. Ricker, in July, 1850, that he had attached the plaintiff's lumber, or Clark had for him; and then went on to explain the reasons why, viz., he had worked hard, and had another note against Higgins alone. McKenney said he received the money of Clark for the property sold, and paid it to the defendant Loring; thus ratifying and adopting the acts of McKenney and Clark. He cannot, therefore, now skulk behind his attorney, and protect himself against the consequences of those acts which he has either caused to be done, or ratified after they were done.

If the cases before cited, be good law, it is not perceived how this action can fail to be maintained.

Fuller *v.* Loring.

*N. Clifford,* for defendant.

1. A judgment creditor is not responsible for the irregular execution of his process, unless he commands or expressly ratifies the illegal acts of the officer. *West* v. *Shockeley,* 4 Har. 287.

2. It is competent for a judgment creditor or his attorney, where there are two or more judgment debtors, to collect the whole amount from one, or partly from one and partly from another, at his election. *Rogers* v. *Sumner,* 16 Pick. 387; *Parker* v. *Dennie,* 6 Pick. 227; *Harrington* v. *Ward,* 9 Mass. 251.

3. The irregularity, if any, in this case, was on the part of the officer, Dunn, and not on the part of Clark, who sold the property in dispute.

HOWARD, J. — The doctrine, that the property of the debtor in goods, is changed and lost by a mere seizure on execution, rests, mainly, upon incidental *dicta* of Judges, that may be gathered from books, and not upon settled opinions of courts, where the point has been directly raised and considered. And so are derived the notions that the property is altered from the owner, and given to the party at whose suit it was seized, and that the general property in goods, after seizure on execution, is in *abeyance.* Such *dicta* may be found in *Wilbraham* v. *Snow,* Lev. 282; *Clerk* v. *Withers,* 6 Mod. 293; 1 Salk. 323; 3 Salk. 159; *Ladd* v. *North,* 2 Mass. 517; *Ladd* v. *Blunt,* 4 Mass. 403; *Bailey* v. *French,* 2. Pick. 590.

The law is, manifestly, otherwise. For, by the seizure of goods on execution, the officer acquires a special property in them; but the general property remains in the debtor until they are sold. The seizure is but the inceptive step in the transmutation of the property, which may be abandoned by the officer, before a change is consummated. He may restore the goods to the debtor, or they may be taken from him by the latter, "or by act of God," or the public enemy: and in neither case, would the execution be satisfied, or the debt cancelled, or the debtor be discharged, though the goods were

of sufficient value to satisfy the judgment. But should the officer waste the goods, or misappropriate the money derived from their sale, or fail to return the execution, the debtor would be discharged. *Shelton's case,* Dyer, 676, note; *Thomson* v. *Clark,* Cro. Eliz. 504; *Payne* v. *Drewe,* 4 East, 522; *The King* v. *Allnutt,* 9 East, 282; *Blake* v. *Shaw,* 7 Mass. 506; *Ludden* v. *Leavitt,* 9 Mass. 105; *Rice* v. *Tower,* 1 Gray, 429; *Nichols* v. *Valentine,* 36 Maine, 322; *Churchill* v. *Warren,* 2 N. H., 298; *Folsom* v. *Chesley,* 2 N. H., 432; *Lewis* v. *Richardson,* 6 Rich. 382; *Nelson* v. *Rockwell,* 14 Ill. 375.

The execution was in force when the plaintiff's goods were seized and sold, and the sale was effective to pass the property to the purchaser. The plaintiff, though a surety upon the note, was a joint debtor in the judgment and execution, and was under the same obligation, as the principal, to pay the judgment creditor; and it was competent for the latter to cause the property of either to be taken to effect the payment of the debt. The mere seizure of the goods of the principal, as has been shown, did not discharge the debt, or release the debtors. By abandoning to the owner the property seized, wholly, or in part, the creditor, in the case under consideration, did no wrong to the principal; and there is no proof that it was detrimental to the surety, otherwise than would have been the fulfillment of his contract. The shop, first seized, was not wasted; but the creditor not choosing to risk his whole debt upon it, might well seek payment or satisfaction more readily from other property of either debtor. He was under no obligation to pursue the seizure of the principal's property, for the benefit of the surety, without request or indemnity, and upon his own hazard.

This is not of the class of cases where the creditor takes security from the principal which he is bound to appropriate in payment of the debt. Neither the attachment, nor the seizure of the property of the principal, constituted security in that sense. It was not given by the principal, or received as such by the creditor, but taken by the officer *per invitum*. It might be taken from him by legal process; the title might

be questionable, and it might not then appear to be sufficient on sale, to discharge the debt and costs. Compelling the creditor, therefore, to resort to the debtor's property first seized, in order to collect the debt, would impose an unreasonable restriction upon his rights, which might, in many cases, operate much to his inconvenience and detriment. He was not bound by his general duty to active diligence in collecting the debt, to collect it in a particular manner, or from a particular source. If the surety would compel the creditor to collect the debt of the principal, he should give suitable indemnity against the risk, delay, and expense that might be incurred. *Wright* v. *Simpson*, 6. Ves. 734; *Hayes* v. *Ward*, 4 Johns. Ch. 123; *Page* v. *Webster*, 15 Maine, 249, where it was held, (258,) that an indorser of a note is not discharged, by the holder's releasing property of the maker's attached on a writ, which was afterwards conveyed, when they became insolvent. *Warner* v. *Beardsley*, 8 Wend. 194; 1 Story's Eq. § 327.

Whether the seizure and sale of the plaintiff's goods, was such an abandonment of the prior seizure of the principal debtor's property, as to require a new seizure and proceedings for the sale of it, to satisfy the remainder due upon the execution, it is not necessary to decide. It is sufficient for the defence, that the plaintiff was not injured by the measure adopted by the defendant, in enforcing payment from his debtor, who chose to make no effort to save himself from the legitimate consequences resulting from his contract.

*Plaintiff nonsuit.*

SHEPLEY, C. J., and APPLETON, J., concurred.

RICE, J., did not sit.

TENNEY, J., non-concurred, and gave the following dissenting opinion:—

A building, which had been treated as personal property, was attached upon a writ, (made to recover payment of a note, given by one Higgins, as principal, and the plaintiff, as his surety,) on Oct. 30, 1849, at 5 o'clock P. M., as the pro-

perty of Higgins. Judgment was recovered against both defendants at the June term, 1850, of the late District Court, in the county of Oxford, and within thirty days thereafter, being July 10, 1850, the building was seized by an officer upon the execution, issued on that judgment, and subsequently sold. Another attachment of the building was made upon a writ in favor of the defendant, on a claim against Higgins alone, on the same day; judgment was rendered in this last suit at the November term, 1850, of the same Court, in the county of Oxford.

By the return of the officer, the attachment against Higgins and the plaintiff was prior to the other. The date of the attachment on the former, is of a particular hour of the day; and the other is on the same day, without any thing to indicate the time of the day. And the attachment on a writ, when the hour on which it was made is stated, will take precedence of another made on the same day, without the statement of the hour. *Fairfield & al.* v. *Paine*, 23 Maine, 498. The attachment on the writ against Higgins and the plaintiff, was treated as being prior to the other, by the seizure of the property attached belonging to Higgins, on the execution obtained in that action, while the other was pending in Court.

After the building was seized on execution and advertised for sale, without any abandonment of the claim created by the attachment and seizure, the property now in dispute was seized and sold on the same execution, by another officer, and in another county. And the question now presented is, whether the seizure of the building as the property of the principal debtor in the execution, and the notice given of the sale of the same, followed by the sale as advertised, without any new seizure, was not a protection of the plaintiff's property in controversy, so far as the latter was sold to satisfy that part of the execution, which would have been satisfied from the avails of the sale of the building.

In *Ladd* v. *Blunt*, 4 Mass. 402, Chief Justice PARSONS says, in delivering the opinion of the Court, "where goods, sufficient to satisfy the judgment, are seized on *fieri facias*, the

Fuller v. Loring.

debtor is discharged, even if the sheriff waste the goods, or misapply the money arising from the sale, or does not return the execution; for, by a lawful seizure, the debtor has lost his property in the goods."

It is said, by PARKER, Chief Justice, in Bailey v. French, 2 Pick. 586, "it is true, where goods of a debtor are seized in execution, it is payment pro tanto to the value of the goods, whether the officer lawfully dispose of them or not." In Chandler v. Furbish, 8 Greenl. 408, the Court treat the doctrine referred to in Ladd v. Blunt as sound, and regard the seizure of personal property upon an execution as a discharge of the execution, so far as it is sufficient. The cases where this principle has been so emphatically expressed, were not those in which the controversy had reference to personal property, and consequently are not the opinions of the Court upon points actually presented. But they are views of highly distinguished Judges, given, not by way of illustration, but as the settled doctrines of the law; and such they are regarded. This appears from the remarks of SHEPLEY, J., in delivering the opinion of the Court in Tuttle v. Gates, 24 Maine, 395, where he says, " The judgment against the debtor is considered as satisfied, after the sheriff has taken sufficient personal property of the debtor to pay it," and cites Mounterey v. Andrews, Cro. Eliz. 237; and proceeds, " The sheriff may sell the property after the decease of the debtor. Clerk v. Withers, 2 L'd Raymond, 1072." This doctrine is also stated by PARSONS, C. J., in the case of Ladd v. Blunt, 4 Mass. 403, who observes, " Where goods sufficient to satisfy the judgment are seized on a fieri facias, the debtor is discharged, even if the sheriff waste the goods, or misapply the money arising from the sale, or does not return the execution. For, by a lawful seizure, the debtor has lost his property in the goods." The opinion in Tuttle v. Gates, after quoting as above, goes on, " the last remark, that the debtor has lost his property in the goods, by such a seizure of them, may be considered to be incorrect, according to the case of Giles v. Grover, 6 Bligh, 279, but it will still remain the unimpeached doctrine of the

law, that if the goods are wasted, the debtor will be discharged."

It is a principle of equity, that when a creditor takes property as security from the principal debtor, who has a surety, that he is bound to hold the property, fairly and impartially, for the benefit of the surety, as well as himself; and if he parts with it, without the knowledge of the surety, he shall lose his claim against the surety to the amount of the property given up. *Baker* v. *Briggs*, 8 Pick. 122.

The Master of the Rolls, in *Law* v. *East India Co.*, 4 Vesey, 829, uses this language: "It cannot be contended, on any principle that prevails with regard to principal and surety, that where the principal has left a sufficient fund in the hands of the obligee, and he thinks fit, instead of retaining it in his hands, to pay it back to the principal, the surety can ever be called upon."

In *Cragthorne* v. *Swinborne*, 14 Vesey, 162, Sir SAMUEL ROMILLY said in argument, "a surety will be entitled to every remedy, which the creditor has against the principal debtor, to enforce every security and all means of payment; to stand in the place of the creditor, not only through the medium of the contract, but even by means of securities entered into without the knowledge of the surety, having a right to have those securities transferred to him, though there was not any stipulation for that, and to avail himself of all those securities against the debtor." In a note to this case, it is said: "The doctrine of the Court, as to the right of substitution, is said by Lord BROUGHAM to have been luminously expounded in the argument of Sir SAMUEL ROMILLY, in *Cragthorne* v. *Swinborne;* and Lord ELDEN, in giving judgment in that case, sanctioned the exposition by his full approval." *Rushforth, ex parte*, 10 Vesey, 412; *Wright* v. *Morley*, 11 Vesey, 22.

In *Hayes* v. *Ward*, 4 Johns. Ch. 130, it is said by the Chancellor, "It is equally a settled principle in English chancery, that a surety will be entitled to every remedy which the creditor has against the principal debtor, to enforce every se-

curity, and to stand in the place of the creditor, and to have his securities transferred to him, and to avail himself of those securities against the debtor. This right of the surety stands, not upon contract, but upon the same principle of natural justice, upon which a surety is entitled to contribution from another."

Courts of law have held, that whatever would discharge a surety in equity, would be a good defence at law. *Rees* v. *Berrington*, 2 Vesey, jr. 542.

In *People* v. *Jansen*, 7 Johns. 337, it is said by the Court, " that the ancestor of the defendant was a surety only, appears upon the face of the bond, and whatever would exonerate the surety in one court ought also in the other. I am unable to discover any good reason for sending the defendant into a court of chancery." *Boston Hat Man. Co.* v. *Messinger*, 2 Pick. 223.

The Court say, in *Commonwealth* v. *Vanderlin*, 8 Serg. & Rawle, 457, " there is no clearer rule in equity, than that when the creditor has the means of satisfaction in his own hands, but chooses not to retain it, but suffers it to pass into the hands of the principal, the surety can never be called upon." And this doctrine was applied in a suit at law. In *Letchtinthaler* v. *Thompson*, 13 Serg. & Rawle, 157, it is said by the Court, " when the creditor has the means of satisfaction in his own hands, actually or potentially, and does not choose to retain it, the surety is discharged."

It is not claimed that these principles are of such universal application, that when an attachment of property, supposed to be that of the principal, has been made on mesne process against him and his surety, or seized on execution, that the rights of the latter are abridged by an omission to sell the property, and apply the avails in satisfaction of the execution. It may be real estate, and the creditor is not bound, even after the appraisal and the return of the officer, to accept it in satisfaction. *Ladd* v. *Blunt*, 4 Mass. 402. If it be personal property, the creditor is not required to incur the risk of adverse claims and vexatious, and perhaps expensive liti-

gation. *Page* v. *Webster*, 15 Maine, 249; *Bellows* v. *Lovell*, 4 Pick. 153. In these there is no lien by an agreement between the creditor and the principal debtor, but the right of the former is by a claim, to which the latter's consent was not necessary to give it effect, and which he could not have resisted.

The question here, is not, whether the creditor may not *abandon* the property attached on a certain writ or seized on a certain execution, so that it may go back into the hands of the owner, or be holden by an attachment, which was subsequent to that of the one who abandons. But it is, where the property was not abandoned by the first attaching creditor, but was actually sold by virtue of the execution on which it was seized, and while the attachment on mesne process was in force, and on no other, whether measures can be taken by this creditor to withdraw the avails of any part thereof, so that it shall not be applied to the execution by virtue of which the sale was made, and supply the deficiency from property of the surety.

If the building had been sold on the defendant's execution against the plaintiff and Higgins, before the sale of property of the plaintiff, the latter would be invalid, because the execution was actually satisfied, so far as the property would extend in discharging the execution, though not indorsed thereon. It is believed that this case is not essentially different from the one supposed. The building was not restored to the owner after its seizure; it was not abandoned by the creditor; it was not in the power of the principal debtor to reclaim it; nor could it be taken on an execution in a suit, where there had been a subsequent attachment in another suit, so long as it was held by the execution on which it was seized; it was in the custody of the law, under the first attachment and the seizure on execution in the same suit, and so continued till it was sold; it is obvious, that it was intended to be sold on that execution; that intention was carried into full effect, and the property passed into the hands of the purchaser. If there can be any application of the

doctrine, fully recognized by this Court, that the judgment against the debtor is considered as satisfied after the sheriff has taken sufficient personal property to pay it, the present is a case to demand it. The defence is not put upon the ground, that the building·was not sold under the seizure upon the execution in the hands of the officer, or that the purchaser did not acquire a property by the purchase. And if the seizure and sale was a satisfaction of the execution on which it was seized and sold, as it regards the owner of the property and the principal debtor, on every principle of justice, the surety should stand in no worse condition.

The final sale of the building related back to the seizure on execution; no seizure was made after that of July 10. It was sold under the notice first given. All the steps taken, from the time of the seizure to the divesting of the property from the owner, were parts of the sale. While the officer was pursuing the course pointed out by the statute, it is not perceived by what authority another officer in another county could seize and sell other property, belonging to the plaintiff, upon the same execution, when it could not be known till the sale of the building, that it would be needed upon the execution in satisfaction thereof.

The proceeds of the sale of the building were to be considered as money received in payment of the execution, and the expenses attending the seizure and sale; it could be applied to no other till the first was satisfied. Before such satisfaction, it could not be retained legally, to be applied afterwards to a judgment not thus recovered.

The plaintiff's property was sold, and appropriated to the execution, when the process of selling the building was going on by authority of the same execution; and the money raised from the building upon that sale, was not appropriated as the law required.

So far as the plaintiff's property was taken, which would have been unnecessary, by the application of the avails of the sale of the building, to the payment of the execution

against him, he has been injured, and is entitled to his remedy in this form of action.

It is however insisted, that the defendant is not responsible, the unlawful sale of the plaintiff's property being the acts of the attorney, without the special direction of the defendant. It was the duty of the attorney, under the general authority of his principal, to take measures to obtain the money upon the debt; and his duty did not terminate with the recovery of the judgment. The directions given by the attorney to the officers, in their attempts to collect the debt, were those which were entrusted by the creditor to him; and they were the directions of the former, for which he is liable. But evidence reported in the case, shows that the creditor was actually conusant of the proceedings, touching the attachment, the seizure and sale of the property; and that these proceedings were approved by him; and also that he received the avails of the sale, in part at least upon his execution against Higgins alone; and the money received upon the execution against the plaintiff was the proceeds of his goods, for taking which this suit was instituted.