## ELEAZER BARNEY *v.* JOSIAH CLARK.

A creditor, who has commenced an action against the principal upon a promissory note, may discontinue it without prejudice to his rights against the sureties, although property of the principal may have been attached therein.

In such a case, the mere facts that the creditor, being the payee of the note and knowing the relation of its signers, had, before the discontinuance of his action, in answer to the inquiry of the principal, informed him that the note was secured by the attachment, and that the principal had given this information to the surety and in consequence of it had neglected to secure the surety, will not estop the creditor or a subsequent endorsee of the note from afterwards collecting it of the surety.

Where the payee of a note received of A., who was not a party to it, its amount, and A. took the note, which was subsequently at his request endorsed by the payee; *Held*, that there was evidence of a sale of the note by the payee to A., although the former did not understand that he was making a sale at the time when he received the money and A. first took the note.

ASSUMPSIT. The action was referred and the referee made the following report :

"This suit is founded upon the following promissory note :

Canaan, June 17, 1857.
For value received we jointly and severally promise to pay George Harris, or order, two hundred dollars, on demand, with interest annually.

CLARK & ELLIOTT,<br>JOSIAH CLARK."

On which note is endorsed, July 2, 1860, one hundred and fifty dollars. It was also endorsed, "George Harris, not holden."

The firm of Clark & Elliott was composed of two members, Jesse Clark and Roswell Elliott, the former a son and the latter a son-in-law of Josiah Clark. The money for which the above note was given was loaned by Harris to the firm, and Josiah Clark was only a surety for the firm, and this fact was known to said Harris when he took said note.

In the spring of 1861, said Harris left this note with Geo. W. Murray, Esq., for collection, but gave him no notice that Josiah Clark was surety. Murray at the same time held a note against Clark & Elliott, dated May 30, 1859, for $54.00, payable to Alfred Barney, or order, on demand with interest annually, which note was endorsed in blank by said Barney. Murray made a writ in favor of Harris against Clark & Elliott and Josiah Clark, dated about May 20, 1861, intending at the time to cover both these notes, he having the impression that the Barney note was signed by Josiah Clark, the same as the other. This writ was served and the property of Clark & Elliott attached to a sufficient amount to pay the Harris note and more, but not enough as it proved to pay both notes with interest and costs. The property of Josiah Clark was also attached on said writ, but no personal service was made of this writ on any of the defendants until September, 1861, nor did they know of the pendency of the suit until that time. Previous to this, in the summer of 1861, Eleazer Barney, this plaintiff, having a large claim against Clark & Elliott, commenced a suit thereon, and at-

tached all their property that was known to the officer, which was not already mortgaged to Barney, subject to said Harris' attachment, and personal service of this writ was made on defendants, at the same time of the other. Barney's debt against the firm was much larger than they had property to pay. These actions were entered in court at September Term, 1861, and continued, counsel appearing for defendants. After the firm had thus failed, Josiah Clark became anxious to ascertain whether the Harris suit was secured upon the property of the firm, or whether he was to be held liable as surety. Elliott also wished to ascertain that fact, as he wished to have the firm property applied to pay that debt without holding Josiah Clark liable for the same. In December, 1861, Elliott made inquiries of Murray in regard to this debt being secured upon the company property, informed said Murray that the debt belonged to the . firm to pay, and that Josiah Clark was only sure-' ty on the note. Murray informed Elliott that the attachment in the Harris suit was first upon the company property, and was thus secured, and Elliott communicated the same to Josiah Clark, who took no further interest in the matter. Elliott had at this time a watch and some other personal property not attached and not known to the officer, with which he would then have secured said Josiah Clark if he had supposed said Clark was to be holden liable on the Harris note.

It was understood that these actions were to be defaulted, and judgment rendered thereon at April Term, 1862, and the defendant's .counsel did not attend court. At said term said Murray, finding that his writ against Clark & Elliott and Josiah Clark, in the name of Harris, would not cover both the notes intended by him to be covered by it (the Harris note and the Alfred Barney note,) discontinued the suit in favor of Harris as against said Josiah Clark, and then took judgment against Clark & Elliott on the Alfred Barney note, and withdrew the Harris note altogether from the suit. After court, Harris called on said Murray for his money, and Murray requested this plaintiff to advance it to him and take this Harris note, which he did. Harris did not understand at the time that he was selling the note, but supposed the money had been collected on it, but afterwards, at Barney's request, he endorsed the note not holden. The execution in the name of Harris against Clark & Elliott, which issued on the Alfred Barney note, was levied and satisfied on the property of the firm, and neither the firm nor Josiah Clark knew but that the judgment and execution in the name of Harris was founded upon the Harris note, until June, 1863, when E. Barney, this plaintiff, demanded the pay on said Harris note of Josiah Clark, who refused to pay the same, and this suit was commenced against said Clark, June 16, 1863. In the meantime Elliott had died insolvent, and Jesse Clark, with the failure of the firm became utterly irresponsible.

Upon these facts I find that the defendant, Josiah Clark, had been discharged as surety upon the note, and that he is, therefore, not liable in this suit, and award that defendant have and recover of said plaintiff the costs of reference, taxed at $26.81, and costs of court, to be taxed by the court.

To this finding plaintiff excepted, on the ground that the facts found as above set forth, did not in law warrant the finding for the defendant in this action, on the ground that he had been discharged as surety on the Harris note. And this award is to be subject to revision by the whole court, as they may hold the law to be.

*Murray*, for plaintiff.

*Barnard*, for defendant.

BARTLETT, J. A creditor, who has commenced an action against the principal upon a promissory note, may discontinue it without prejudice to his rights against the sureties, although property of the principal may have been attached. *Concord Bank* v. *Rogers*, 16 N. H. 9; *Baker* v. *Davis*, 22 N. H. 37; *Barker* v. *Marshall*, 16 Vt. 522. Consequently, the omission to take judgment upon the note now in suit in the action in the name of Harris could not of itself discharge the surety. It is unnecessary to inquire, whether, in this State, after a judgment against the principal, a mere release of his property attached in the suit would under any circumstances discharge the surety; see *Baker* v. *Davis; City Bank* v. *Young*, 43 N. H. 461; *Springer* v. *Toothaker*, 43 Me. 381; *Hubbell* v. *Carpenter*, 5 Barb. 526; *Fuller* v. *Loring*, 42 Me. 493; *Bellows* v. *Lovell*, 5 Pick. 312; for in the suit of Harris no judgment was rendered on this note.

It is claimed that the plaintiff is estopped to assert a claim upon this note against the defendant, but we do not think that this appears upon the facts stated by the referee. If we were to assume that the plaintiff stands exactly in the position of Harris, and if the latter, knowing Clark to be a surety, had told him that the note was secured by an attachment of the property of the principal in his suit, still there is not found any agreement or holding out by Harris that he would rely solely on that attachment, or that he would prosecute that suit upon the note; and the case would stand in no way different if Clark had learned of the attachment in any other manner, for the statement of the attachment by Harris could have no greater legal effect than the existence of the attachment; *Batchelder* v. *Sanborn*, 24 N. H. 480; and in either case the defendant would be bound to know the legal right of Harris to discontinue that suit and look to the surety for payment of the note. Broom's Leg. Max. *190. And certainly upon the facts stated by the referee the case stands no stronger for the defendant. It is at present unnecessary to say what our conclusion would have been if the referee had found that Clark applied to Harris to know if he should be held upon the note, in order that he might act accordingly, and that Harris knowing this informed him or by his conduct and language induced him, exercising ordinary prudence, to believe that Harris intended to and would rely solely on his attachment, and that consequently the defendant lost an opportunity of securing himself, for this is not found in the report.

The payment of the amount of the note to Harris by the plaintiff was not of itself in law an extinguishment of the note; *Chester* v.

*Plaistow*, 43 N. H. 544 ; and although Harris, when he received the money, did not understand that he was selling the note, yet, under the circumstances, his subsequent endorsement of the note at the plaintiff's request, was evidence of a sale of it by him to the plaintiff.

*The report must be recommitted.*