## THE SAMMIE.

## THE R. W. BURKE.

### MacMaster *et al. v.* THE SAMMIE AND THE R. W. BURKE.[1]

*(Circuit Court, S. D. New York. March 18, 1889.)*

COLLISION—TUGS—LEAVE TO CROSS COURSE.

The tug S., having the tug B. on her starboard, at a distance of 700 to 900 feet, gave two whistles, to which the B. responded with two whistles. The S. thereupon starboarded its wheel, so as to approach somewhat nearer shore, and continued its course. The B. continued its course nearly at right angles to the S., and when 50 to 100 feet apart the S. reversed, but the tows collided, 250 to 300 feet from shore. *Held* that, having given leave for the S. to cross its course, the B. was in fault for continuing in its course instead of reversing under a starboard helm: that the collision was not proof that the agreed course was unsafe, especially as all the witnesses agreed that it was safe: and the stoppage of the S. was so near the moment of collision as to be considered a measure *in extremis*.

In Admiralty. Libel for damages. On appeal from district court. 35 Fed. Rep. 327.

[1] Modifying 35 Fed. Rep. 327.

Libel by Robert MacMaster and others, owners of the bark Mary Mac-Master, against the tug R. W. Burke and the tug Sammie, for a collision between the bark and a car-float, while the bark was in tow of the Burke and the float was in tow of the Sammie. Decree against both tugs, and both appeal.

E. D. McCarthy, for the Sammie, cited The B. B. Saunders, 23 Blatchf. 387, 25 Fed. Rep. 727; The Tug Brothers, 2 Biss. 106; The Albemarle, 8 Blatchf. 200; The City of Hartford, 11 Blatchf. 72; The Greenpoint, 31 Fed. Rep. 231; The Susquehanna, 35 Fed. Rep. 320.

Biddle & Ward, for the R. W. Burke, cited (in addition) The Rosecrans, 34 Fed. Rep. 766.

LACOMBE, J. The libelant's bark, lashed to the starboard side of the tug R. W. Burke, while proceeding from Buttermilk channel to pier 4, East river, came into collision with a railroad float along-side the steam-tug Sammie, receiving damages for which this libel was filed. The Burke's course from Buttermilk channel was to the eastward of Diamond Reef buoy, passing about 500 or 600 feet off, and continuing on up the river till about opposite pier 6, when she rounded to, so as to head to the flood-tide when making her slip at the lower side of pier 4. She was then heading across and a little down. The Sammie rounded the Battery, some 300 or 400 yards off, and bore up the river nearer in' to the piers than the Burke was when she rounded to. The Sammie first sighted the Burke, and gave her a signal of two whistles. Getting no answer, she,. about half a minute afterwards, repeated the signal of two blasts, to which the Burke promptly responded with a like signal of two blasts. The distance between the vessels at the time of the interchange of signals is in dispute; the witnesses for the bark making it about 500 or 600 feet, and those for the Sammie about twice that distance. There seems no reason for rejecting the conclusion upon that point of the district judge, who finds it from 700 to 900 feet. The Sammie, after the exchange of signals, starboarded her wheel so as to approach somewhat nearer to the shore, and continued on, making up the river. The Burke continued moving in towards shore, heading nearly at right angles to the Sammie, and when she had reached a point within about 50 or 100 feet of the Sammie, the latter stopped and reversed, the bark and car-float thus coming into collision about opposite pier 6 and between 250 and 300 feet off shore. On behalf of the Burke it is claimed that immediately upon giving the answering signals she stopped, reversed full speed, and put her wheel hard a-starboard. This is disputed by the Sammie's witnesses, and the finding upon that point of the district judge, who heard the conflicting testimony, will not be disturbed, especially as it seems impossible to reconcile the claim of the Burke with the fact of the collision. The distance between the tugs and their relative positions when they agreed on their respective courses was such that the prompt execution of such a maneuver as above described would have carried the Burke to the stern of the Sammie, even if it did not keep her entirely outside of her course. The learned district judge has upon this state of

facts found the Sammie liable for undertaking to pass across the bows of the Burke, instead of porting to go under her stern, or stopping until the latter had crossed the Sammie's course. Before the signals were exchanged, the Sammie, having the Burke upon her starboard hand, was bound to keep out of her way,—a duty she would have performed by porting or stopping, or both. By her signal she asked leave to pass across the Burke's bows instead. She did not proceed with her maneuver without waiting for an assenting reply, as did *The Doris*, 31 Fed. Rep. 301, and *The Columbia*, 25 Fed. Rep. 844. When the Burke assented to her proposition she was not in fault for continuing on the course agreed upon, modified by sheering further inshore, as the district judge found she did, unless some faulty navigation on her part while on such agreed course caused the collision, or unless the maneuver which she thus asked and obtained leave to execute was a dangerous one. The subsequent collision is not alone sufficient to condemn the attempt as an unsafe one, in view of the fact that the Burke did not at once execute the maneuvers necessary to keep her out of the course which the Sammie had obtained her consent to take. Moreover, all the witnesses, without exception, concur in the statement that the course agreed upon was a proper one, and entirely safe and easy; each boat insisting that the collision occurred solely because the other did not keep to it. In this respect the case is to be distinguished from *The City of Hartford*, 11 Blatchf. 72, and *The Albemarle*, 8 Blatchf. 200. Having agreed to the mode of passing, which the Sammie proposed, the Burke was in fault for continuing on her course into the water through which the Sammie must necessarily pass in executing the maneuver, when, by a prompt stoppage, and reversal under a starboard helm, the Burke could have left the Sammie's course free and clear. It was no doubt the duty of the Sammie, after the signals were exchanged, to keep her course, (perhaps sheering towards shore as she did,) but her subsequent stoppage was so close to the moment of collision that it may fairly be considered a measure *in extremis*. Howard, the deck-hand on the tug "Howard," a disinterested witness, called by the Burke, testified that the Sammie was going ahead till the bowsprit of the bark was within 100 feet of the car-float, and himself thought there would be a collision even before she stopped. Libelants are entitled to a decree against the tug R. W. Burke, for their damages and interest. The decree of the district court against the tug Sammie is reversed, with costs to the Sammie as against the Burke.