THE EMPIRE.

THE TRANSFER NO. 3.

KENNEDY v. THE EMPIRE and THE TRANSFER NO. 3 et al.

(Circuit Court of Appeals, Second Circuit. September 12, 1894.)

No. 150.

1. COLLISION IN EAST RIVER — BREACH OF STATUTE AND INSPECTORS' RULES — TOWS.

A steamer going east in the east channel of the East river is in fault for keeping in close to the Blackwell's Island shore, and attempting to pass a steamer going in the opposite direction starboard to starboard, instead of keeping in the middle of the river, and passing port to port, as required by the state statute, the rules of the supervising inspectors, and the cus-

tom of navigation in that locality. Nor can she excuse herself on the pretense that, having a tow astern on a 50-fathom hawser, there was danger that the tow would drift upon the rocks at Brown's Point on the Long Island shore; for, if there was any such danger, it was her duty to shorten the hawser, or take the tow alongside.

**2. SAME—ABSENCE OF LOOKOUT.**
Failure of the other vessel to have a stationed lookout will not render her liable, it appearing that her captain saw the approaching steamer in time to pass her safely according to the customary rules of navigation.

Appeal from final decree of district court, eastern district of New York, dismissing the libel as to Transfer No. 3, and holding the Empire liable in solido for damages sustained by libelant's schooner Thos. Potter in collision with a car float lashed to the starboard side of the Transfer. The schooner was lashed to the port side of the Empire, which had another schooner in tow on a hawser of 50 fathoms.

Wm. W. Goodrich, for Kennedy.

Chas. C. Burlingham, for the Empire.

Henry W. Taft, for the Transfer No. 3.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The collision happened at about 8 a. m., March 11, 1890, near the upper end of Blackwell's Island, in the east channel, and less than 125 feet from shore. The tide was flood, the wind light, and the weather rainy, but there was no difficulty in seeing vessels on the river. The Empire was bound east; the Transfer, west. The latter, just previous to the accident, had come out of Harlem river, on a course about from Eighty-Ninth street, in the city of New York, to the upper end of Blackwell's Island, intending to round in shore, and thus take advantage of the eddy. The Empire rounded Lunatic Point (which makes out on the Blackwell's Island shore about a quarter of a mile below the upper end of the island), under a starboard wheel, passing within 150 feet of the point, and continued to swing in even closer to the shore as she proceeded. The channel is nearly 600 feet wide. The district judge held the Empire in fault for "going over to the Blackwell's Island side of the river, as she approached the turn at the head of Blackwell's Island, instead of keeping in the middle of the river." We concur in this conclusion. The statute of the state, the rule of the supervising inspectors, and the custom of navigation in the locality all required her to keep towards mid river, and to pass such vessels as she encountered going in the opposite direction port to port. The excuse offered for hugging the Blackwell's Island shore is that, with a tow astern on a 50-fathom hawser, there was some chance, if she kept to starboard of mid river, of having her tow swing over on the rocks at Brown's Point, on the Long Island shore. We agree with the district judge that the proofs fail to sustain such excuse; and, if there was any such risk involved, it was the duty of the Empire to shorten the hawser, or to take the tow alongside. She should not so incumber herself that she cannot navigate according to law, and then suggest the incumbrance as excuse for failure so to do. It is quite clear

upon the proofs that, had she been navigating in mid river, the catastrophe would not have occurred; and the district judge, therefore, properly held her in fault for the collision.

The appellants insist that the Transfer was also guilty of fault contributing to the collision. When the Empire rounded Lunatic Point, she blew a signal of two whistles to the Transfer, indicating a request that both vessels should pass, not according to rule port to port, but starboard to starboard. The Empire claims that this signal was assented to, the Transfer giving an answering signal of two whistles; and that thus, under the rule laid down in The Burke and The Sammie, 37 Fed. 907, the Empire was not in fault for continuing on the course agreed upon, and the Transfer was in fault for not navigating in accordance with the agreement, and keeping to port. Upon this question, however,—viz. what signals were sounded by the Transfer?—there is a conflict of evidence, the witnesses for the Transfer testifying that she replied, not with two whistles, but with an alarm signal of three whistles. Upon this conflict the district judge, who saw most of the witnesses, seems to have found in favor of the Transfer, as he holds her free from fault, and we are not satisfied that his conclusion was erroneous.

It is not contended that the Transfer was at fault for any failure to stop and back; nor is she to be held liable for not having a stationed lookout, as her captain saw the Empire at a distance sufficient to allow him to pass her safely, according to the customary rules of navigation. Had he seen her sooner than he did, at any time, in fact, before she blew her two whistle signal, such discovery would not have warranted him in assuming that the Empire was going to try to pass him starboard to starboard, because, although she passed within 150 feet of Lunatic Point, the trend of the shore is such that had she kept on without further starboarding, or ported a little, she would have been where she ought to have been by the time the vessels reached each other. As an earlier view of the Empire would not have called for any change in the navigation of the Trasfer, the failure to discover her when she was still below Lunatic Point in no way contributed to the collision.

The decree of the district court is affirmed, with interest to the libelants against the Empire, and costs to the Transfer against the Empire.